## JOHN RACE AND JAMES BIRD v. WILLIAM DEHART.

1. An applicant for the benefit of the insolvent laws who is refused a discharge on the ground that his bonds are insufficient, may immediately after such refusal surrender himself to the sheriff, give new bonds, and make another application for his discharge.

2. It is not necessary that the inventory given by a debtor on discharge from custody, together with his bonds, should be dated or sworn to at the

time of his discharge; if he deliver an old inventory, made and sworn to upon a previous discharge from custody, it is sufficient.

3. In a *certiorari* reversing the judgment of the Court of Common Pleas upon the verdict of a jury upon the issue of insolvency, this court will not review the merits of the verdict upon the evidence.

This cause came into this court by a *certiorari* to the Common Pleas of Warren county, reversing the proceedings, verdict, and judgment in that court, upon the application of Dehart, the defendant in *certiorari*, to be discharged from imprisonment as an insolvent debtor. The plaintiffs in *certiorari* were creditors, who had opposed his discharge, and who had entered into the usual undertaking at the hearing.

The facts and reasons relied on for the reversal of the judgment are set forth in the opinion of the court.

The cause was argued before Justices POTTS and OGDEN, in the branch court.

POTTS, J. The facts of the case, as agreed upon by the attorneys of the respective parties, are substantially as follows:

Dehart was arrested and held to bail upon writs brought by Race and Bird, who obtained judgments, respectively, at August term, 1850, in the Warren Pleas, and, at the ensuing February term, he was surrendered by his bail to the custody of the sheriff; whereupon he entered into bonds to the said Bird and Race, separately, according to the provisions of the 2d section of the " Act abolishing imprisonment on civil process in certain cases," *Rev. St.*, 323, and also made out and delivered to the sheriff inventories of his property under oath, as required by the statute, and was thereupon discharged from custody. At the same time, he presented a petition praying to be discharged as an insolvent debtor, and a day was appointed to hear said application. On the hearing, he was refused a discharge, on the ground that his securities in the bonds given were not freeholders, and he at once surrendered himself to the custody of the sheriff.

After remaining some time in jail, he executed new bonds to Race and Bird, with sufficient sureties, dated April 26, 1851, reciting the previous proceedings, and with the usual condition

to make application, &c.; but instead of making out and delivering new inventories, he delivered the inventories formerly made and sworn to, to the sheriff, or his jail keeper, and was thereupon again released from custody. At the May term following, he presented his second petition for a discharge as an insolvent debtor, and a day was again fixed for the hearing. At the hearing, Bird and Race appeared as opposing creditors, and the petitioner having made the usual proofs and submitted himself to an examination, the court were about to discharge him, when Bird and Race objected, insisting that the court had not jurisdiction of the case, and that petitioner had not made a fair surrender of his property; and having filed the usual stipulation, the case took the regular course, and came to trial before a jury at the next December term, having been once postponed. The cause was then fully heard, the opposing creditors having called several witnesses to testify in relation to the transactions of Dehart, and the jury found in his favor, whereupon the court adjudged that he be discharged.

The plaintiffs in *certiorari* now ask for a reversal of this judgment on several grounds.

1. And the first ground taken is, that Dehart, at the time he made his *second* application for a discharge as an insolvent debtor, was not in a *condition* to enable him legally to do so.

The statute under which he made his application provides, that any person who may be arrested or held in custody by any sheriff, &c., in any civil action upon *mesne* process or process of execution, &c., or who may be *surrendered in discharge of his bail*, shall be discharged from arrest or custody by such officer, provided such person shall make out and deliver to the officer making the arrest, or in whose custody he may be, a true and perfect inventory, under oath, &c., and shall give bond to the plaintiff at whose suit he is arrested, with sufficient security, being a *freeholder or freeholders*, &c., with condition to appear and petition the court for his discharge, &c.; and, *if refused a discharge*, will surrender himself immediately thereafter to the custody of the sheriff, &c., there to remain until discharged by due course of law. *Rev. St.* 323, § 2.

Originally Dehart was undoubtedly within the provisions of the statute. He had been arrested in civil action, had given bail, and, after judgment, had been surrendered in discharge of his bail. But it is insisted that, inasmuch as the court sustained the objection taken to his bonds upon the first application for a discharge, and *for that cause* refused to grant the application, that this placed him in the situation of a debtor who had been "refused a discharge" under the statute; that his subsequent enlargement under new bonds operated as an escape, and that all the proceedings under his second application were illegal and unwarranted.

The question, whether a debtor who, after a hearing upon the *merits* of his case, has been refused a discharge, can legally make a new application, has never been decided in this court, though frequently adverted to. *Sooy* v. *McKean et al*, 4 *Halst.* 86; *State* v. *Sheriff of Middlesex*, 3 *Green* 68; *Voorhees et al.* v. *Thorn et al.*, 1 *Zab.* 77; and the supplement, *Pamph. L.* 1853, *p.* 21, was passed to put this question at rest for the future. But it has never been, so far as I know, seriously contended that a debtor, having failed to obtain a discharge in consequence of a defect in his petition, in his bond, or proof of publication, or the service of notice of his application on his creditors, cannot renew his application at a subsequent time. The 10th section of the "Act for the relief of persons imprisoned on civil process," *Rev. St.* 330, provides, that if it shall appear to the satisfaction of any court before which an application shall be made for the benefit of the insolvent laws, or by the verdict of a jury, if demanded by the debtor, that he has concealed or kept back any part of his estate or property, or made any conveyance, deed, mortgage, judgment, sale, transfer, assignment or other disposition of his estate, real, personal, or mixed, with intent to defraud his creditors, *then* he shall be refused a discharge, and be remanded, &c. And it has only been in such cases, to wit, where when a full hearing upon the merits the debtor has been virtually convicted of *fraud*, that his right to apply again has been doubted. These doubts had a rational foundation. For it would be going a great way to say that a court was required

to set aside its own decision on the verdict of a jury establishing fraud as against the debtor, and allow a new trial, time and again, as often as the debtor should choose to ask it, and that while the statute made no such provision. But this reason certainly loses its force where the application for discharge fails, not upon the merits, but upon some informality in the preliminary proceedings.

Dehart, having been refused a discharge for a defect in his bonds, and surrendering himself thereupon to the custody of the sheriff, was then in custody for the original cause, stood in the same condition as upon his application, and had, consequently, a perfect right to renew it. *Woodruff* v. *Barret*, 3 *Green's R.* 40; *Hulshizer* v. *Kocker*, *Spencer R.* 393.

2. The next question is, did he conform in all things to the requirements of the statute in his second application? It is insisted that he failed to do so, because upon making this application he did not make out and deliver to the sheriff new inventories.

The inventories were delivered by Dehart to the sheriff with the first bonds, previous to his first discharge by that officer. Upon his surrendering himself into custody after the first hearing before the court, these inventories were returned to him.

And when he had executed his new bonds, he redelivered these same inventories to the officer with the bonds previous to his second enlargement. The inventories were sworn to in February, the new bonds dated in April, and the second petition for discharge was in May. But I can perceive no error in this. The statute was complied with. The delivery of the inventory is made a prerequisite to the discharge of the debtor from arrest or custody; it is to be made by a person who is under arrest or in custody at the time; but it is no where said that it must be made at the time of giving bond, or how long before applying for a discharge: for this, it must be borne in mind, is a proceeding *commenced* under the "Act abolishing imprisonment on civil process in certain cases," and not under that "for the relief of persons imprisoned on civil process," which last act requires that this inventory shall form a part of the petition. *Rev. St.* 325, § 1.

It is said that new inventories should have been made, because the debtor might have acquired property between the date of his inventories and the time of this petition; but the answer to that is, that upon his examination he is compelled to disclose the *present* condition of his estate under oath, as well as swear to the truth and fairness of his inventory.

3. The last ground relied on for the reversal of the judgment below is, that Dehart was not an insolvent debtor within the meaning of the statute, inasmuch as, by his own confession, he had a short time before he made his application, gambled away funds belonging to the plaintiffs in *certiorari*, and that he had made no effort to recover back the money.

The statute directs if the court shall be satisfied by the verdict of the jury that the debtor has concealed or kept back any part of his estate, or made any conveyance, &c., with intent to defraud his creditors, they shall refuse to discharge him. *Rev. St.* 330, § 10.

These were questions of fact, therefore pertinent to the issue joined between the parties below. They were submitted to and passed upon by the jury that tried the case. No error is assigned in reference to the admission or rejection of evidence by the court; no complaint is made of any erroneous charge—none was asked or given. Upon *certiorari* we pass upon the jurisdiction of the inferior tribunal, and review its legal decisions, but not its determination upon questions of fact. *N. J. Railroad and Trans. Co.* v. *Suydam*, 2 *Harr.* 62. And if a party is desirous of having any question of law arising, or supposed to arise, out of a state of facts proved on the trial below reviewed upon *certiorari* here, he must raise that question in the court below.

OGDEN, J., concurred.

Judgment affirmed.